UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARYL BLACK,                              :
                                         :    NO. 1:08-CV-00584
        Plaintiff,                       :
                                         :    **OPINION AND ORDER**
                                         :
        v.                               :
                                         :
                                         :
CITY OF BLUE ASH, et al.,                :
                                         :
        Defendants.                      :
                                         :
                                         :
                                         :

        This matter is before the Court on Defendant Scott Noel's Motion for Summary Judgment (doc. 35); Defendant Edward Charron's Motion for Summary Judgment (doc. 36); Defendant City of Blue Ash's Motion for Summary Judgment (doc. 37); Plaintiff's Responses thereto (docs. 46, 47, and 48, respectively); and each Defendant's Reply (docs. 55, 56 and 57). For the reasons stated herein, the Court GRANTS Defendants' Motions for Summary Judgment (docs. 35, 36 and 37).

**I. Background**

        The following facts come from Defendants' Motions, Plaintiff's Responses, and the relevant exhibits, including the police cruiser recordings, each of which the Court closely viewed in its entirety.

        This case arises from a high-speed police chase that

ended with the driver ("Bennett") shot dead by Defendant Charron (doc. 48). At all relevant times, Plaintiff was a passenger in the car driven by Bennett, Bennett having agreed to drive Plaintiff to the drug store to pick up a prescription (Id.). En route, Plaintiff realized they were heading in the wrong direction, and Bennett pulled across the roadway to perform a u-turn in the middle of the road, using a dirt patch off the shoulder to do so (Id.). Defendant Noel viewed the car pull off the road into the dirt patch and put on his cruiser lights to indicate to Bennett that he intended to conduct a traffic stop (doc. 35). Bennett did not stop for the lights, however, and continued to perform the u-turn, such that the two vehicles came within a foot of contact (Id., doc. 48). Bennett then "floored it" and drove away from the officer (Id., doc. 48).

At that point, Noel transmitted over the Hamilton County radio that he just "had a vehicle try and ram [him]" and indicated the direction he was heading (doc. 35). With Noel in pursuit, Bennett performed another u-turn, and Noel perceived this maneuver to be another attempt to "ram" him (Id.). Noel continued pursuit, transmitting the vehicle's plate number over the radio and receiving notice in return that the number belonged to a stolen vehicle (Id.). Noel then transmitted that he intended to "take [Bennett] out" if he had an opportunity, and he received permission to do so. Defendants contend this is a reference to the execution

of a PIT maneuver, a forced rotational stop of a non-compliant suspect vehicle (docs. 35, 36 and 37), while Plaintiff contends that it could mean that Noel was stating his intention to cause bodily harm to Plaintiff or otherwise deprive him of his rights (doc. 48). Shortly thereafter, Noel again made a radio transmission, indicating his direction, his speed (over one hundred miles per hour), and his perception that Plaintiff had tried three times to "ram" him (doc. 35).

Meanwhile, other officers, including Defendant Charron, with their cruisers parked and lights on, were attempting to place stop sticks in the roadway ahead of Bennett's car in an effort to force the car to stop fleeing (doc. 35). However, Bennett veered away from and around the stop sticks, which maneuver forced him to cross over the center line of the road, briefly put him in direct line of one of the parked cruisers, and caused him to narrowly miss one of the officers who was laying the stop sticks (Id.). Bennett continued his high-speed flight, weaving back and forth across the road. He did come to a stop shortly thereafter, a fact that was transmitted over the radio, but he did not stay stopped for long; Noel drove his car into the driver's side door of Bennett's vehicle, and two officers present fired their weapons at the vehicle, shattering the back window of the car, but Bennett nonetheless managed to turn the car around and continue to flee (docs. 35 and 48). Noel then performed the PIT maneuver, spinning

Bennett's car 180 degrees and sending Noel's cruiser crashing into a fence (Id.). Charron, who had heard the earlier shots but had not seen them, drove his cruiser up to Bennett's car and positioned it perpendicular to the car (Id.). Charron then got out of the car and drew his weapon (doc. 48). Bennett's car was stopped, and Charron jumped onto the hood of the car; Bennett then put the car in drive, forcing Charron to fall onto the windshield (Id.). Charron righted himself and fired into the car, fatally wounding Bennett (Id., doc. 35). Plaintiff put his hands in the air and offered no resistance to being removed from the car; he was initially handcuffed but released with no charges filed against him (Id.). Apart from some cuts from the broken glass on the ground, Plaintiff was not physically injured during the chase, the shootings, his extraction from the car or his brief detention by the police (Id.).

Plaintiff's complaint contains the following claims for relief: in violation of 42 U.S.C. §1983, Defendants, under color of law, deprived Plaintiff of clearly established rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including the right to due process, the right to be free from unreasonable searches and seizures and the right to be free from excessive force; in violation of Ohio law, Defendants assaulted Plaintiff and are liable for intentional infliction of emotional distress; and as a result of Defendants'

actions, Plaintiff suffered physical injury, severe emotional distress and pain and suffering (doc. 24).

## II.  Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere

existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,

369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See <u>Matsushita</u>, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. DISCUSSION

As an initial matter, Plaintiff claims (i) that Defendants "violated the basic principle underlying motions for summary judgment" when they "failed to set forth the facts in the light most favorable to the non-moving party" and argues, "[a]ccordingly, [Defendants'] contentions must be summarily rejected" and (ii) that Defendants have failed to concede Plaintiff's version of the facts (docs. 47, 48 , citing <u>Grawey v. Drury</u>, 567 F.3d 302 (6th Cir. 2009) and <u>Phillips v. Roane County, Tennessee</u>, 534 F.3d 531, 538 (6th Cir. 2008)). In addition, Plaintiff suggests that this Court must simply accept his version of the events as true, asserting that the Court must accept Plaintiff's testimony as the real version of events and must view "the facts most favorable to the plaintiff" (<u>Id</u>.).

Plaintiff's interpretation of the summary judgment standard is not exactly correct. The Court is under no duty to simply and unquestioningly accept Plaintiff's testimony as true–if that were so, a court could never grant summary judgment to a defendant because every plaintiff could simply rest on his story. Under the Rule 56 summary judgment standard, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. The <u>Anderson</u> court continued: "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50. Under the summary judgment standard, the Court need not simply accept all of Plaintiff's assertions as true, as it would under a Rule 12(b)(6) Motion to Dismiss. <u>See</u> 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (in reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, all allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the pleader). However, "when the non-moving party presents <u>direct</u> evidence refuting the moving party's motion for summary judgment, the court must accept <u>that</u> evidence as true." <u>Adams v. Metiva</u>, 31 F.3d 375, 381 (6th Cir.

1994)(emphasis added).  Plaintiff has expanded the concept that the Court must not engage in a credibility analysis of direct evidence at the summary judgment stage, which is what <u>Adams</u> stands for, into a blanket standard whereby the Court must accept everything Plaintiff says as true, including all speculations, conclusory allegations, and possibilities.  The Court declines to engage in such an expansion of the summary judgment standard.

In order to assess whether any triable issues of fact exist, the Court reviews the entire record, including the evidence presented by both sides, and, viewing the facts in the light most favorable to the non-moving party, the Court determines, based on the evidence presented, whether one party is entitled to judgment as a matter of law.  <u>Patton</u>, 8 F.3d at 346, <u>Anderson</u>, 477 U.S. at 251-52.  Plaintiff's standard, that the Court must only view the facts most favorable to him, suggests that the Court must ignore entire sections of the record.  In contrast, the actual summary judgment standard requires that the Court view disputed facts <u>in the light</u> most favorable to Plaintiff, which means that the Court, in reviewing the entire record, must draw all reasonable inferences in Plaintiff's favor.  <u>Matsushita</u>, 475 U.S. at 587 ("On summary judgment the inferences to be drawn from the underlying facts... must be viewed in the light most favorable to the party opposing the motion").  Here, where applicable, the Court shall "view the facts in the light depicted by the video tape."  <u>Scott v. Harris</u>,

550 U.S. 372, 386 (2007)(finding that the appellate court erred by accepting non-movant's version of events when police cruiser videos showed "quite a different story...a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury").

Finally, contrary to Plaintiff's assertions, at the summary judgment stage Defendants are under absolutely no obligation or duty to present the facts in the light most favorable to Plaintiff, nor are they required to concede anything to Plaintiff. Again, to accept this version of the summary judgment standard would defeat the purpose of the procedure entirely. The cases Plaintiff cites for the proposition that Defendants must concede the facts to Plaintiff are simply inapposite. Both Phillips and Grawey were appeals of denials of qualified immunity. Grawey, 567 F.3d 302; Phillips, 534 F.3d 531. In the context of an appeal of a collateral order, the appellant must indeed concede the appellee's version of the facts. Id. Notably, however, this is because the only issue before the appellate court on an appeal of a collateral order is not whether there is a triable issue of fact, as it is at the summary judgment stage, but, instead, whether the facts reflect a violation of clearly established law. Phillips, 534 F.3d at 538. Indeed, a party may not appeal a denial of qualified immunity on a factual basis, which is why, in that context, the appellant must concede the facts to the appellee-only

"neat abstract issues of law" are to be reviewed on an appeal of a denial of qualified immunity. (Id.). Before the Court are motions for summary judgment, not appeals of collateral orders. Plaintiff's argument that the Court should summarily reject Defendants' motions because they have failed to adhere to Plaintiff's erroneous standard is not well taken.

## A. Plaintiff's Fourth & Fourteenth Amendment Claims

To succeed in his Fourth and Fourteenth Amendment section 1983 claims against the individual Defendants, Plaintiff must set forth facts that establish the deprivation of a right secured by the Constitution caused by a person acting under the color of state law. Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006). However, government officials like the individual Defendants are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine of qualified immunity is "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). Notably, qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. In determining whether the individual Defendants in this case are entitled to qualified immunity, the Court asks two

questions: Viewing the facts in the light most favorable to Plaintiff, has he shown that a constitutional violation has occurred? Was the right clearly established at the time of the violation? _Id_. at 818 (upholding the two-part analysis of <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) but no longer mandating the sequence of the prongs).

With respect to the municipal Defendant, because <u>respondeat</u> <u>superior</u> liability is not available as a means of recovery under section 1983, Plaintiff must demonstrate that the City of Blue Ash itself was a wrongdoer.   <u>Doe v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir. 1996).   To succeed in this, he must prove that the City "caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1998) <u>quoting</u> <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).   Plaintiff must also show that the City's policy was a "moving force" in the deprivation of his rights and arose from "deliberate indifference" to such rights.   <u>Claiborne County</u>, 103 F.3d at 508.

### 1.   Sergeant Charron and Officer Noel

Plaintiff claims that both the Fourth and the Fourteenth Amendment were violated because the officers used excessive force when Sergeant Charron fired into the vehicle and when Officer Noel set the chain of events in motion by, as Plaintiff contends,

relaying false information about Bennett's actions (docs. 47, 48).

Defendants note that all claims that officers have used excessive

force in the course of an arrest, investigatory stop or other

seizure are to be assessed under the Fourth Amendment's prohibition

against unreasonable seizures, and not under the Fourteenth

Amendment's protection of substantive due process (docs. 35, 36,

citing Graham v. Connor, 490 U.S. 386 (1989)). Plaintiff does not

articulate which specific constitutional right of his was violated

by the officers by their alleged application of excessive force

(docs. 47, 48). Of course, section 1983 does not itself confer

substantive rights, and there is no generic constitutional right to

be free from excessive force. Graham, 490 U.S. at 393-94.

However, giving Plaintiff the benefit of a liberal construction of

his pleadings, the Court construes Plaintiff's claim to be that his

Fourth Amendment right to be free from unreasonable seizures was

violated when the officers ended the chase by stopping the car with

a PIT maneuver and firing bullets at Bennett and that Plaintiff's

Fourteenth Amendment substantive due process right to be free from

arbitrary actions of the government was violated when the officers

engaged in the chase and the alleged use of excessive force that

ultimately led to Bennett's death. The standards of liability

differ significantly according to which amendment applies. Phelps

v. Coy, 286 F.3d 295, 299 (6th Cir. 2002). On the one hand, police

actions under the Fourth Amendment are analyzed to determine

whether they were objectively reasonable and, on the other hand, police actions under the Fourteenth Amendment are analyzed to determine whether they shock the conscience.  <u>Darrah v. City of Oak Park</u>, 255 F.3d 301, 306 (6th Cir. 2001).  The Court addresses each in turn.

### a.    The Fourth Amendment

As a preliminary matter, the Court must determine if and when Plaintiff was seized, as no Fourth Amendment claim can lie absent a search or seizure.  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843-44 (1998).  Here, any attempt to claim that Plaintiff was seized by virtue of the chase itself fails as a matter of Supreme Court precedent.  <u>See</u>, <u>e.g.</u>, <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991)(police pursuit in attempting to seize a person does not amount to a "seizure" within the meaning of the Fourth Amendment); <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-597 (1989).  While in the moving car, Plaintiff's freedom of movement was certainly restricted, but by Bennett's actions, not the officers' actions.

In contrast, when the car was stopped by the PIT maneuver and the subsequent shooting of Bennett, Plaintiff's movement was certainly restricted by the officers, as it was when he was handcuffed after having been removed from the stopped car.  <u>See</u>, <u>e.g.</u>, <u>Brower</u>, 489 U.S. at 597; <u>Terry v. Ohio</u>, 329 U.S. 1, 16 (1968).  Notably, though, Plaintiff offers no facts at all that

would support a claim that the seizure by use of the PIT maneuver or the handcuffs was unreasonable. The Court finds that, to the extent Plaintiff was seized by use of the PIT maneuver and the handcuffs, such seizure was reasonable. See, e.g., Scott, 550 U.S. at 386 ("A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death"); Terry, 329 U.S. at 16.

With respect to the shooting of Bennett, Plaintiff contends that it was an unreasonable use of deadly force, that Charron knew that Plaintiff was in the vehicle when he shot into the car, thereby placing Plaintiff at risk of serious harm, that Plaintiff was, indeed, harmed by the shooting, and that liability under section 1983 can be imposed for either or both the physical or emotional injuries sustained by the complainant (docs. 47, 48, citing Porter v. Rex, 2008 WL 880169). Defendants assert that, given that no force of any kind was used against Plaintiff and that he suffered no physical injury, he cannot claim that excessive force against him was used by the officers in the shooting (docs. 36, 37). Further, Defendants cite to Bella v. Chamberlain, 24 F.3d 1251 (10th Cir. 1994) for the proposition that an excessive force claim requires some evidence of physical injury (Id.).

Although Plaintiff claims in his responses to Defendants'

motions that he "testified at length concerning the physical and emotional effects he has suffered as a result" of the incident at issue, he points to nothing in the record regarding such testimony. The Court is left to assume that Plaintiff is referring to his deposition testimony, where Plaintiff alleges that he suffered cuts when he was placed on the broken glass on the ground when he exited the car and that he complained of whiplash caused by Bennett's car being struck by the police car. In addition, Plaintiff testified that he visited a mental health specialist six times and that he was diagnosed with post-traumatic stress disorder as a result of the incident at issue.

Plaintiff has pointed to no evidence that would suggest, even taken in the light most favorable to him, that excessive force was used against him when Bennett was shot. Plaintiff does not and cannot allege that any whiplash he suffered was as a result of the shooting, and the Court has already found that the use of the PIT maneuver, which Plaintiff does allege was the cause of his whiplash, was reasonable as a matter of law. The cuts Plaintiff suffered as a result of being laid on the ground were not caused by the Bennett shooting, and, in any event, were so minor they did not require stitches. The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham, 490 U.S. at 396, and it is only the use of

excessive force that may give rise to a section 1983 claim.  The cuts sustained by Plaintiff in the course of him being handcuffed do not in any way rise to the level of proof of excessive force.

Finally, the Court need not reach the issue of whether an allegation of post-traumatic stress disorder generally linked to the incident at issue, but not particularly linked to the shooting, would be sufficient to support a finding of injury necessary for an excessive force claim based on the shooting.[1]  This is because the Fourth Amendment reasonableness standard does not apply to section 1983 claims for injuries "inadvertently inflicted upon an innocent third party by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force."  Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000)(citing Brower, 489 U.S. at 596 and finding no Fourth

---

[1]  However, the Court notes that the case upon which Plaintiff relies for the proposition that emotional injury alone is sufficient for a section 1983 claim does not, in fact, stand for that proposition.  Plaintiff appears to be relying on the statement in the opinion that the plaintiff in the case "complained of no physical or emotional injuries and has refused to allow discovery of any medical records...." Porter, 2008 WL 880169 at *7.  First, that is not a holding of the court and consequently cannot be read to support the assertion that an emotional injury standing alone is sufficient for a section 1983 claim.  Second, in context, that statement is directly supported by Bella v. Chamberlain, 24 F.3d 1251, 1257-58 (10th Cir. 1994), in which, as the Porter court and Defendants here noted, the Tenth Circuit observed that it had never upheld an excessive force claim without some evidence of physical injury.  See Porter, 2008 WL 880169 at *7, citing Bella, 24 F.3d 1251.

Amendment liability where plaintiff was hit by officers' stray bullets). Such claims are, instead, adjudicated under the substantive due process standard of the Fourteenth Amendment. <u>Id</u>.

Therefore, Plaintiff's claim that his Fourth Amendment rights were violated fails the first prong needed to sustain a section 1983 claim as he has not adduced evidence creating a genuine issue as to whether excessive force was used in his seizure. <u>See</u> <u>Sigley</u>, 437 F.3d at 533. Summary judgment for the individual Defendants on Plaintiff's Fourth Amendment claim is therefore appropriate.

### b. The Fourteenth Amendment

Generally speaking, the Fourteenth Amendment's due process clause protects individuals against arbitrary governmental action. <u>Wolf v. McDonnell</u>, 418 U.S. 539, 558 (1974). In the context of police chases, courts are to determine whether the officers' behavior shocks the conscience. <u>Jones</u>, 585 F.3d at 976, <u>citing</u> <u>Lewis</u>, 523 U.S. at 846-47. Actions that shock the conscience are "those that are motivated by an 'intent to harm suspects physically or to worsen their legal plight' in a manner unrelated to the legitimate object of arrest." <u>Id</u>.

Regarding Officer Noel, Plaintiff rests much of his case on the assertion that Noel intentionally lied about Bennett trying to "ram" him three times, which lie served as the premise for permission being given to "take [Bennett] out" and set the events

in motion that led to Bennett's death and Plaintiff's claims (docs. 47, 48). Plaintiff contends that a reasonable jury could find that Officer Noel's lie constitutes proof that he intended to physically harm or worsen Plaintiff's legal plight (Id.). In addition, Plaintiff contends that Noel's request to "take [Bennett] out" could be interpreted to be an indication of Noel's intent to harm Plaintiff (Id.).

The Sixth Circuit recently had cause to revisit its jurisprudence regarding Fourteenth Amendment excessive force claims brought in the context of a high speed police chase. In Jones v. Byrnes, the two men suspected of armed robbery engaged officers in a high speed chase, which ultimately ended when the suspects collided with Jones, who was simply in his car on his way to work and was wholly unconnected to the robbery or the chase. 585 F.3d 971, 974. Jones' estate sued the officers, alleging that their failure to end the chase when the suspects turned off their headlights several miles into the chase, which failure was allegedly a violation of departmental policies, allowed for an inference that the officers actually intended to harm the suspects and therefore shocked the conscience, thus violating Jones' Fourteenth Amendment rights. Id. The district court found that the officers were entitled to qualified immunity because their actions did not shock the conscience and, even if their actions had risen to that level, it was not clearly established at the time

that such conduct violated the Fourteenth Amendment, and the Sixth Circuit affirmed.[2] <u>Id</u>. at 973.   Relying on the precedents set by <u>Lewis v. County of Sacramento</u>, 523 U.S. 833, and <u>Meals v. City of Memphis</u>, 493 F.3d 720 (6th Cir. 2007), the court found that the estate had produced no evidence of malicious intent.   <u>Id</u>. at 978. Even if the failure to halt the chase when the suspects turned off their headlights increased the risk to others, and even if it violated departmental policies, the court found that no inference of malice or intent to harm could reasonably be made.   <u>Id</u>.

In <u>Meals</u>, the officer initiated pursuit of a speeding car but did so without turning on her lights or siren and without obtaining authority from a supervisor to continue the chase,  all violations of police procedure.   493 F.3d 720, 723.   The chase continued through multiple busy commercial streets, through intersections at which neither the suspect nor the police officer

_____

[2]   On this basis, Defendants urge the Court to find that, as a matter of law, Plaintiff cannot overcome their qualified immunity because, as in <u>Jones</u>, neither party has cited a single case in which an officer's actions in a police chase have ultimately been found to shock the conscience, which necessarily means that the "clearly established" prong cannot be met here (doc. 59).   The Court is persuaded by the concerns raised by Judge Martin in his concurrence in <u>Jones</u>, however, and finds value in determining whether, in the instant case, Plaintiff's constitutional rights were violated.   <u>See</u> <u>Jones</u>, 585 F.3d at 980 (Martin, J., concurring)(expressing concern about creating a self-perpetuating cycle in Fourteenth Amendment police-pursuit cases where "district courts will skip the constitutional inquiry in favor of disposing of cases on the 'clearly established' prong," which could ultimately "result in essentially writing that cause of action off the books").

stopped, and ended when the suspect crashed into Meals' car, killing the suspect and two occupants in Meals' car and permanently paralyzing the eight-year-old passenger in Meals' car. Id. at 724. The court specifically rejected the argument that the violations of police procedure raised a question of fact regarding whether the officer acted with malice or with the intent to worsen the suspect's legal plight, finding that there was no evidence from which a jury could reasonably infer a purpose to cause harm unrelated to the legitimate object of the chase. Id. at 731.

Here, to the extent Plaintiff's claim rests on the possibility that a jury could find that Officer Noel's statement that he was going to "take [Bennett] out" if given the chance was evidence of his intent to "maliciously and sadistically" cause harm, his claim fails because he has not introduced any evidence that would allow the jury to make such a massive inferential leap. Plaintiff has, instead, offered his speculation and his conclusory allegations, contending that a jury could find that Noel lied about Bennett trying to ram him and that, in light of that lie, Noel's statement was evidence of his intent to harm. Speculation and conclusory allegations are not evidence and cannot be used as a means to make the inference Plaintiff suggests. Noel voiced his intent to take Bennett out, he was given permission to do so, and he eventually did take Bennett out, just as he intended to do—with the PIT maneuver. The record evidence supports only one

conclusion–that when Noel said he was going to take Bennett out, and he received permission to do so, he was stating his intention to use the PIT maneuver. Plaintiff's unsupported conjecture that a jury "could find" malice or sadism behind a statement that all the evidence supports was a statement referencing a legitimate police maneuver used in exactly the kind of situation present here does not create a genuine issue of fact. See Matsushita, 475 U.S. at 586-87 (plaintiff must show more than metaphysical doubt).

Regarding Noel's statement that Bennett tried to ram Noel three times, Plaintiff characterizes this statement as a lie and points to the cruiser videos and Plaintiff's deposition testimony as proof of this. The Court has carefully viewed each of the tapes in evidence in its entirety and cannot agree that a reasonable jury could take the leap Plaintiff requires. While it is not evident from the tapes that Bennett tried to ram Noel's car three times, neither is there any evidence of malice or intent to harm on Noel's part or any basis on which a rational jury could interpret Noel's statement as a lie rather than a misperception colored by the fear and adrenaline of the moment. On two occasions, Bennett performed a u-turn in such a way that his car reversed direction and passed Noel's car at very close range. Noel perceived these as attempts to "almost ram [him]". Just after the second u-turn, Noel called the plate number in and was told the car was stolen. At that point, he was pursuing Bennett at nearly 100 miles per hour, and it

was then that, in the context of warning other officers not to pull out, he stated that Bennett had tried to almost ram him three times. The Court is able to watch, frame by frame, what transpired and can see that Bennett's car was angling away from Noel's in such a way as to try to elude him, not hit him. However, Officer Noel lived this in real time—from the first u-turn to the statement at issue just over two minutes had elapsed—and had to make instantaneous decisions based on events that were rapidly unfolding but were charged with danger. The video tapes clearly and incontrovertibly show that Bennett disregarded police directives multiple times, nearly struck officers and others several times, and endangered the lives of many along the way. What the video tapes do not show is that Officer Noel lied, and no facts are presented in the tapes that could reasonably support characterizing his statement as a lie rather than a mistake. Plaintiff's deposition testimony does not change this analysis as it merely provides Plaintiff's interpretation of the events that are evident on the tapes and, as noted above, Plaintiff's speculations about Noel's motives or, for that matter, Bennett's state of mind or intentions, are not evidence and do not serve to create a genuine issue of fact with respect to whether Noel violated Plaintiff's right to be free from arbitrary governmental actions. See Scott, 550 U.S. at 386.

Even if Noel intentionally lied about Bennett trying to

-24-

ram him and did not simply perceive ramming where none was intended, and did so, as Plaintiff contends, in an effort to convince his colleagues that his life had been threatened by Bennett and that a high speed pursuit was therefore justified, under Lewis, Meals and Jones no reasonable jury could infer from such a lie that Noel had a purpose to maliciously or sadistically cause harm unrelated to the legitimate object of arresting Bennett for his traffic violation and subsequent flight. Lewis and Meals both involved police pursuits on the basis of traffic violations, in violation of the applicable police procedures; Jones involved a chase of suspected armed robbers. In all three cases, the courts expressly found that neither alleged nor actual violations of police procedure suffice as proof of malice. Therefore, here, even if Noel lied in order to justify his pursuit under the City's procedures, his pursuit on the basis of the traffic violations alone, which are uncontested here, would have survived a constitutional challenge. Bennett clearly created the circumstances for the pursuit. As the Supreme Court found with respect to the officer in Lewis, Noel did "nothing to cause [Bennett's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes."

<u>Lewis</u>, 523 U.S. at 855. Bennett's "outrageous behavior was practically instantaneous and so was [Noel's] instinctive response." <u>Id</u>. Prudence might have quelled Noel's reaction to give chase and a time for reflection or the luxury of hindsight might have permitted him to more accurately perceive Bennett's moves as evasive rather than aggressive. But Noel's "instinct was to do his job as a law enforcement officer, not to induce [Bennett's] lawlessness, or to terrorize, cause harm, or kill." <u>Id</u>. Prudence and reflection were "subject to countervailing enforcement considerations, and while [Noel] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part." <u>Id</u>.

With respect to Sergeant Charron, Plaintiff contends that Charron's conduct of jumping on to the hood of the car and firing into it shocks the conscience and "was undertaken in such a manner as to intentionally harm [Plaintiff] or worsen his legal plight" (doc. 48). Plaintiff further contends that a genuine issue exists "as to the veracity of Sergeant Charron's contention that [Bennett's car] attempted to strike him prior to the time he jumped on the hood" (<u>Id</u>.). Charron contends that he thought he saw Bennett attempt to get out of the stopped car and crossed in front of the car to apprehend him but then jumped on to the hood of the car in order to avoid being hit by Bennett (doc. 36). He further contends that his shooting neither endangered Plaintiff nor

actually injured him (Id.).

        Viewing the entire record in the light most favorable to
Plaintiff, the Court cannot find that Plaintiff has demonstrated a
genuine issue of fact with respect to whether Sergeant Charron's
actions in shooting Bennett shocked the conscience such that
Plaintiff's Fourteenth Amendment rights were violated.  "[I]n
[this] rapidly evolving, fluid, and dangerous predicament which
precludes the luxury of calm and reflective pre-response
deliberation," Charron's conduct can be found to shock the
conscience "only if [it] involved force employed 'maliciously and
sadistically for the very purpose of causing harm' rather than in
a good faith effort to maintain or restore discipline." Claybrook,
199 F.3d at 359 (noting that, in contrast, the deliberate
indifference standard applies in situations where government
officials are "afforded a reasonable opportunity to deliberate
various alternatives prior to electing a course of action").  The
video tapes clearly show that Charron literally made a split-second
decision to jump on the hood of the car and, within a matter of two
seconds, Charron was on the car, the car was moving, and Charron
was shooting.  The tapes also clearly show Charron directing his
fire only and deliberately at Bennett, not at Plaintiff.  Even if
Charron jumped on the car one second before it started to move, and
even though the bullets shattered glass around Plaintiff, that is
not evidence that Charron's actions amounted to "unjustifiable

intentional conduct undertaken with the direct purpose of causing [Plaintiff] harm." <u>Claybrook</u>, 199 F.3d at 360-61, <u>citing</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 835-36 (1994).  Absent such evidence, Plaintiff's Fourteenth Amendment claim against Charron cannot survive summary judgment.

Plaintiff has not adduced evidence that creates a genuine issue of fact regarding whether the individual Defendants violated his rights under the Fourteenth Amendment.  Even if the Court were to find that he had, Plaintiff has produced no authority to support the assertion that it was clearly established at the time of this incident that the officers' actions violated those rights.  <u>See</u> <u>Jones</u>, 585 F.3d at 978 (noting that no guidance from either the Sixth Circuit or the Supreme Court exists regarding what specific actions violate the Fourteenth Amendment in the context of police pursuits).  Therefore, the officers would be entitled to qualified immunity under the second <u>Saucier</u> prong.  <u>See</u> <u>Saucier</u>, 533 U.S. at 210; <u>Jones</u>, 585 F.3d at 978.

## 2.    The City of Blue Ash

As an initial matter, Plaintiff argues that summary judgment on his claim against the City would be premature because, at the time of the filing of the instant motions, Plaintiff had an outstanding motion to compel the production of documents relating to the City's policies and procedures, which information Plaintiff did not have available for his deposition of the police chief (doc.

46). Plaintiff's motion to compel was granted in relevant part on November 27, 2009 (doc. 58), and Plaintiff continued the deposition of the chief, at which the chief produced a variety of polices and procedures, on December 15, 2009 (doc. 62). Plaintiff has not submitted any additional authority subsequent to this continued deposition nor sought leave of Court to amend his response to the City's motion for summary judgment, and the Court considers Plaintiff's argument regarding the prematurity of summary judgment to be moot.

Plaintiff asserts that the City has violated his constitutional rights (i) by interpreting its high speed pursuit policy in contrast to its express provisions in such a way that Plaintiff's safety, as a passenger, did not take precedence over the apprehension of Bennett, the suspect; (ii) by acting with deliberate indifference in training and supervising its officers; and (iii) by failing to investigate the incident at issue (doc. 46).

However, no liability for constitutional violations can attach to the City when no liability for constitutional violations has been found against the individual Defendants. See Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir. 2002)(finding that, to sustain municipal liability, a plaintiff must first show that his constitutional rights were in fact violated by the municipal employees). Here, the Court has found that the individual

Defendants are entitled to summary judgment on Plaintiff's claims against them. Therefore, Plaintiff's claims against the City cannot survive summary judgment. <u>See</u> <u>May v. Franklin County Commissioners</u>, 437 F.3d 579, 586 (6th Cir. 2006); <u>Weeks v. Portage County Executives Offices</u>, 235 F.3d 275 (6th Cir. 2000).

### B. Plaintiff's State Law Claims

In addition to Plaintiff's federal civil rights claim under section 1983, Plaintiff alleges state law claims against Defendants for intentional infliction of emotional distress and assault (doc. 24). Because the Court finds summary judgment is appropriate on the federal claim, the Court declines to accept supplemental jurisdiction of Plaintiff's state law claims and dismisses them without prejudice. <u>See</u> 28 U.S.C. §1367(c); <u>Brandenburg v. Housing Auth. of Irvine</u>, 253 F.3d 891, 900 (6th Cir. 2001).

## IV. CONCLUSION

While the Court is sympathetic to Plaintiff being caught in a car with and at the mercy of a driver clearly unconcerned with Plaintiff's safety, there is simply insufficient evidence to support Plaintiff's federal claims against Defendants. In short, no genuine issue of material fact exists with respect to whether Plaintiff's constitutional rights were violated by Defendants in the course of a police chase that ended in the death of the driver. Accordingly, for the reasons indicated herein, the Court GRANTS

Defendants' Motions for Summary Judgment (docs. 35, 36 and 37),

DISMISSES Plaintiff's 42 U.S.C. § 1983 claims WITH PREJUDICE, and

DISMISSES Plaintiff's state law claims WITHOUT PREJUDICE.

SO ORDERED.


Dated: March 17, 2010          /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge